IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ANTIONETTE VEAL for RMJ**   )
                              )
                              )
       Plaintiff,      )
                              )
V.                            )   Civil No. **07-436-CJP**[1]
                              )
**MICHAEL J. ASTRUE,**        )
**Commissioner of Social Security** )
                              )
       Defendant.     )

## ORDER

**PROUD, Magistrate Judge:**

    Before the Court is Antionette Veal, on behalf of her daughter, "RMJ," seeking review of the final decision of the Social Security Administration denying RMJ children's Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 1382.[2] **(Doc. 2).** Both Veal and the defendant agency commissioner have fully briefed their positions **(Docs. 13 and 16)**, and the administrative record ("R.") has been produced. In accordance with 42 U.S.C. § 405(g), this Court reviews the decision denying benefits to ensure that the Administrative Law Judge's decision is supported by substantial evidence and that no mistakes of law were made.

---

[1]Pursuant to 28 U.S.C. § 636(c), upon the consent of the parties to having all further proceedings in the District Court conducted before a magistrate judge, U.S. District Judge G. Patrick Murphy referred this case to U.S. Magistrate Judge Clifford J. Proud. **(Docs. 12, 17 and 18).**

[2]The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. 20 C.F.R. §§ 416.925 detailing medical considerations and listing of impairments relevant to an SSI claim, relies on 20 C.F.R. pt. 404 subpt. P, the Disability Insurance Benefits regulations.

1

**Relevant Procedural History**

On July 22, 2004, Antionette Veal, on behalf of her daughter, RMJ, filed an application for children's SSI under Title XVI of the Social Security Act, alleging disability since RMJ's birth in January 1993. **(R. 39-40).**

Veal and RMJ, represented by counsel, appeared at a hearing in December 2006 before Administrative Law Judge (ALJ) Mitchell F. Stevens; RMJ testified. **(R. 301-312).** In his decision dated January 9, 2007, ALJ Stevens found that RMJ was not disabled as defined under the Social Security Act. **(R. 11-16).** The ALJ determined RMJ had a virtual total loss of visual acuity and function of the right eye due to congenital strabismus, aphakia, and secondary glaucoma, but no other credible, medically established physical or mental impairments. **(R. 15).**

The ALJ found that RMJ may have less than marked limitations related to acquiring and using information, moving about and manipulating objects, and health and physical well-being. **(R. 15).** However, the ALJ did not find any marked or extreme limitations, despite RMJ and her mother's assertions. **(R. 15).** No medical impairment, singly or in combination, was found to be presumptively disabling or medically equivalent to the presumptively disabling impairments listed in Part B (or A) of Appendix 1, Subpart P, Regulation No. 4 (20 C.F.R. §§ 416.924(d), 416.924(d) and 416.926a). **(R. 15).** The ALJ also concluded RMJ did not have a medically determinable physical or mental impairment which resulted in marked or severe functional limitations. **(R. 15).** The ALJ relied primarily on Dr. Mark A. Nekola's April 2005 evaluation. **(R. 13-14).** The ALJ noted that RMJ "never had an unusual number of absences [from school] or tardiness between 1998 and 2004." ALJ Stevens also

considered check-off form Child Functioning Questionnaires submitted from five of RMJ's teachers, and the teachers' narrative comments. **(R. 14).** Although the ALJ took note of many "moderate" limitations and some "marked limitations' on those questionnaires, he observed that RMJ was in "regular" classes, getting good grades, and that there was no indication of mental illness, emotional disturbance or learning disorder, and no credible, long-term or untreatable limitations, aside from her right eye problem. **(R. 14-15).** Therefore, the ALJ ultimately concluded RMJ was not "disabled" for purposes of receiving SSI. **(R. 15).**

The Appeals Council denied a request for review on April 13, 2007, making the ALJ's decision the final decision of the Commissioner of Social Security. **(R.3-5).** Consequently, this matter is subject to review by the District Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## Arguments Presented

Plaintiff Veal argues:

1. The ALJ failed to consult a medical expert to determine if RMJ's impairments medically equaled a presumptively disabling ailment– a "Listing;"

2. The ALJ mischaracterized the evidence regarding RMJ's school attendance and sensitivity to light;

3. The ALJ failed to explain why RMJ and her mother were found not credible regarding RMJ's functional limitations; and

4. The ALJ failed to indicate the weight given to each teacher's opinion vis-a- vis Dr. Nekola's assessment, and did not build a logical bridge between the evidence and the conclusion RMJ is not disabled.

**(Doc. 13).**

**Applicable Legal Standards**

To qualify for SSI, a claimant must be "disabled." An individual under age 18 will be considered "disabled" if that individual has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 1382c(a)(3)(C)(I).** A "marked" limitation is "more than moderate and less than extreme," and may arise when several activities or functions are limited or even when only one is limited as long as the degree of limitation is such as to interfere seriously with the child's functioning. **20 C.F.R. § 416.926a(c)(3)(i)(C).** An "extreme" limitation occurs when there is no meaningful functioning in a given area. There may be extreme limitation when several activities or functions are limited or even when only one is limited. **20 C.F.R. § 416.926a(c)(3)(ii)(C).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." **42 U.S.C. § 1382c(a)(3)(C).**

Social Security regulations set forth a three-step evaluation to determine whether a child's impairment(s) result in disability. The first step is whether the child is working and if the work the child is doing is "substantial gainful activity." If the child is working and the work is "substantial gainful activity," the child is not disabled. **20 C.F.R. § 416.924(b).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. § 416.972.** The second step is whether the child has an impairment or combination of impairments that are severe. If the child's impairment(s) are not severe, i.e. causes no

4

more than minimal functional limitations or is only a slight abnormality, there is not a severe impairment and the child is not disabled.  **20 C.F.R. § 416.924(c).**  The third step is whether the impairment(s) meet, medically equal, or functionally equal in severity a listed impairment in appendix 1 of subpart P of part 404.  **20 C.F.R. § 416.924 (d).**  If a child's impairment(s) does not meet the duration requirement, or does not medically equal, or functionally equal in severity a listed impairment, a child will not be found disabled.  **20 C.F.R. § 416.924(d)(2).**  In determining whether the child's impairment(s) functionally equal a listing, all functional limitations caused by the child's impairment(s) are assessed.  **20 C.F.R. § 416.926a.**  How the claimant functions is assessed in six domains:  acquiring and using information, attending and completing tasks, interacting and relating to others, moving about and manipulating objects, caring for yourself, and health and physical well-being.  **20 C.F.R. 416.926a(b)(1).**  In order to functionally equal a listing the impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning.  **20 C.F.R. 416.926a(b)(2).**

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."  **42 U.S.C. § 405(g).**  Thus, the Court must determine not whether RMJ is in fact disabled, but whether ALJ Stevens' findings are supported by substantial evidence; and, of course, whether any errors of law have been made.  **See Books v. Chater,** **91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir. 1995).**  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  ***Richardson v. Perales,* 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence" the entire administrative record is taken into consideration, but this Court does not re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater,* 103 F.3d 1384, 1390 (7th Cir. 1997). Furthermore, an ALJ may not disregard evidence when there is no contradictory evidence. *Sample v. Shalala,* 999 F.2d 1138, 1143 (7th Cir. 1993). If the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d. 936, 940 (7th Cir. 2002).

## Analysis

Following the three step evaluation to determine whether a child's impairment(s) result in marked and severe functional limitations, ALJ Stevens concluded at the first step that RMJ has never engaged in substantial gainful activity since birth, thus satisfying the first step in the analytical process. **(R. 13 and 15).**

At the second step, RMJ was found to have a severe medically-established impairment – "a virtual total loss of visual acuity and function of the right eye due to congenital strabismus, aphakia, and secondary glaucoma." **(R. 15).**

At the third step, ALJ Stevens concluded RMJ's impairments did not meet or equal in severity the criteria of any impairment listed in Appendix 1. **(R. 14 and 15).** He also concluded RMJ's impairments were not functionally equivalent to any impairment listed in Appendix 1. **(R. 14 and 15).** Therefore, ALJ Stevens denied RMJ SSI benefits because RMJ had not been under a "disability" as defined in the Social Security Act. **(R. 15).** It is at step three where RMJ and her mother argue the ALJ erred in his

conclusions. RMJ's loss of the use of her right eye is not at issue; rather, that impairment and the related physical, social and functional impact is at the center of this appeal.

**Equivalence of a Listing**

It is undisputed that RMJ's visual impairments do not meet listing 102.02, regarding loss of visual acuity. **(R. 13, p. 9).** Therefore, the inquiry becomes how the visual impairment impacts functioning. **20 C.F.R. Pt. 404, Subpt. P, App.1, Pt. B § 102.00(A)(4)(c).** RMJ contends the ALJ failed to consider the residual pain in her right eye, headaches, sensitivity to light, inability to see the chalkboard at school, distractibility and emotional trauma as a result of being teased about her right eye. Citing *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004), RMJ contends the ALJ erred by failing to consult a medical expert to determine if the aforementioned affects medically equaled a presumptively disabling ailment.[3] *According to Barnett*, "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Id.*

The Commissioner correctly observes that the opinion of a reviewing agency physician can conclusively establish whether there is an equivalency to a listing. ***Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).** The opinion of an agency physician satisfies the requirement for an expert opinion regarding the equivalency question. *Farrell v. Sullivan*, **878 F.2d 985, 990 (7th Cir. 1989).** Although the ALJ did not specifically mention the opinions of agency physicians Drs. Julio M. Pardo and Aarti J.

---

[3]The only listing mentioned is 102.02. Listing 102.04 would seem to be an option, as it pertains to "loss of visual efficiency," but again it cannot be met because it requires visual efficiency of the better eye of 20% or less after best correction. In any event, it is not the prerogative of the Court to make such determinations. Rather, the issue is only whether the ALJ made an error in how he analyzed the case, which would require remand.

7

Raut, both concluded RMJ did not meet a listing, and that she did not have the required marked or extreme domain limitations necessary for an equivalency. **(R. 208; and 213-214).** There is no contradictory medical evidence. Rather, their opinions are consistent with the opinion of consulting physician Dr. Mark A. Nekola, who concluded RMJ's "level of visual functioning is essentially normal," because of the 20/20 visual acuity of the left eye. **(R. 210).** Dr. Nekola also stated that RMJ "does very well at seeing the board at school and reading." **(R. 209).**

Although the uncontradicted medical opinions of Drs. Pardo and Raut, and Dr. Nekola for that matter, would seem to counter the thrust of the appeal, the Court will address the other arguments presented in order to leave no doubt that the ALJ's decision was proper.

### **Mischaracterization of the Evidence**

Regarding RMJ's school attendance and sensitivity to light, ALJ Stevens' opinion states:

> She said that her right eye hurt if she stared at a TV too long, or if she were in a place where lights were *unusually bright*.
>
> * * *
>
> She was noted to have an artificial right eye by several teachers at her school, causing some difficulty with paying attention and reading, *but she never had an unusual number of absences or instances of tardiness between 1998 and 2004*.

**(R. 13 (emphasis added)).**

A review of the record evidence reveals that RMJ testified that the lighting in school bothers her, indicating she was referring to fluorescent lighting brighter than in the ALJ's hearing room. **(R. 306).** Of course, the Court is unaware of how bright the

8

lights are in the ALJ's hearing room, so whether the ALJ's characterization is incorrect remains to be seen. Regardless, RMJ ignores the fact that none of RMJ's teachers or the physicians who examined her recorded any sensitivity to light or impact thereof. Thus, RMJ has failed to show the required link to a medical impairment and a functional impact. (*See* **20 C.F.R. §§ 416.924a(b)(2) and 416.924a(b)(7)(ii)).**

Attendance records indicate the following:

| Year | Days Absent | Days Tardy |
|------|-------------|------------|
| 1998 | 13 | 162 |
| 1999 | 8 | 0 |
| 2000 | 9 | 0 |
| 2001 | 13 | 0 |
| 2002 | 7.5 | 0 |
| 2003 | 9.5 | 0 |
| 2004 | 41 | 0 |

**(R. 110).** She also missed 19.5 days in 2006. **(R. 113).** The Commissioner accurately notes that there is no evidence specifically connecting RMJ's absences and tardiness to her visual ailment or any other medical or psychological impairment. There was also no indication of the impact of this degree of attendance. None of RMJ's teachers mention her absences and tardiness as a problem. (*See* **R. 260-296).** Again, RMJ has failed to satisfy the required link to a medical impairment and a functional impact. (*See* **20 C.F.R. §§ 416.924a(b)(2) and 416.924a(b)(7)(ii) and (v)).**

### Credibility

It is argued that the ALJ failed to explain why RMJ and her mother were found not credible regarding RMJ's functional limitations. For clarification, it is noted that the ALJ's summary of his findings indicates RMJ and her mother were not found credible with respect to their allegations of *marked or extreme* functional limitation, "for the

9

reasons set out in the body of [the] decision." **(R. 15).** In any event, RMJ takes issue with the ALJ's failure to specifically address RMJ's testimony regarding functional limitations– pain in the right eye, headaches, sensitivity to light, inability to see the chalkboard, distractibility and emotional trauma as a result of being teased by her peers.

Credibility determinations are afforded special deference. ***See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).** In evaluating the credibility of statements supporting a Social Security application, the ALJ must comply with the requirements of Social Security Ruling 96-7p. ***Giles v. Astrue,* 483 F.3d 483, 488 (7th Cir. 2007).** Under SSR 96-7p, the ALJ's assessment of the credibility of an individual's statements about the effect on functioning must be based on a consideration of all the evidence in the case record, including medical signs and laboratory findings. **SSR 96-7p.** "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." **SSR 96-7p.**

The body of the ALJ's decision includes a discussion of pain, headaches, sensitivity to light, having to sit in the front of the room to see the chalkboard, being distracted, and being teased. **(R. 13).** It was noted that RMJ uses prescription eye drops, and that by her own account, her headaches are cured with Advil or Aleve. **(R.13 and R 306).** The ALJ noted that despite the "moderate" and "marked" limitations checked-off on the evaluation forms, the teachers' corresponding comments reflected that RMJ got along well with teachers and students and that her abilities and behaviors were pretty much the same as those of her classmates. **(R. 14;** *see also* **R. 263, 264, 267, 283 and 293).** Being teased by her peers surely is painful to RMJ, but there is no evidence that she has required counseling or medication, and no doctor or teacher observed a problem.

The ALJ also noted that no doctor has stated or implied that RMJ is physically disabled or totally incapacitated. **(R. 14).** To the contrary, Dr. Nekola clearly stated, without contradiction by any other medical professional and consistent with the teachers' comments and even RMJ's testimony, that RMJ's functioning is good because the vision in her left eye is good. **(R. 210).** As discussed in more detail below, there simply is no substantial conflict in the evidence, only in the characterization of the evidence. More to the point, a "marked" limitation "interferes seriously with your ability to independently initiate, sustain, or complete activities. **20 C.F.R. § 416.926a(e)(2).** The evidence clearly does not meet that threshold. Therefore, the ALJ's decision is grounded in the evidence and sufficiently set forth in the body of his decision.

### Teachers' and Dr. Nekola's Opinions

ALJ Stevens' opinion summarizes Dr. Nekola's April 2005 consultative exam and assessment that there was little or no hope for improvement of the right eye, but the left eye had 20/20 acuity, and "her overall visual function was good because of the good vision in her left eye." **(R. 13-14).** According to Dr. Nekola, as reflected in Stevens' opinion, the resulting functional limitation is that RMJ lacks gross and fine depth perception and would have difficulty driving vehicles or heavy equipment or manipulating fine objects in small places.[4] **(R. 13-14).** The ALJ also summarized the five teachers' questionnaires, noting that there were "moderate" and some "marked" limitations reflected in those forms. **(R. 14).** But, the ALJ also observed that the teachers' narrative comments reflected RMJ's abilities and behaviors were on par with those of her peers. **(R. 14).** The ALJ then concluded: "At worst, the claimant has a less

---

[4] RMJ did not testify to any corresponding difficulties in those areas.

than marked limitation in health and physical well-being because of the visual limitations noted by Dr. Nekola." **(R. 14).** RMJ now contends that the ALJ failed to indicate the weight given to each teacher's opinion, vis-a- vis Dr. Nekola's assessment, and that the ALJ's opinion fails to set forth a logical bridge between the evidence and the conclusion RMJ is not disabled.

RMJ ignores the plain sequential analysis of the evidence in the ALJ's opinion, and the plain fact that the ALJ did <u>not</u> discount either the teachers' or the doctors' opinions. Rather, the ALJ merely recognized that the teachers' narrative comments did not support the degree of limitation checked-off on the form. Moreover, RMJ ignores that the teachers' narrative comments and Dr. Nekola's opinion are consistent with each other. When there is no specific contention of equivalence, no substantial contradictory evidence and no specific rejection of evidence, it is unnecessary for the ALJ to articulate reasons for accepting evidence. *See Scheck v. Barnhart*, **357 F.3d 697, 700 (7th Cir. 2004) (citing** *Steward v. Bowen*, **858 F.2d 1295, 1299 (7th Cir. 1988)).** There was substantial, uncontroverted evidence in the record to support the ALJ's conclusion, and his analysis, while not voluminous, logically bridged the evidence to his conclusion– that conclusion was inescapable.

**IT IS THEREFORE ORDERED,** that for the aforestated reasons, the final decision of the Social Security Administration to deny RMJ Supplemental Security Income (SSI) benefits is **AFFIRMED.** Judgment shall enter accordingly.

DATED: September 29, 2008    s/ Clifford J. Proud
                **CLIFFORD J. PROUD**
                **U. S. MAGISTRATE JUDGE**